## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **CALDWELL PARISH POLICE JURY** | **CIVIL ACTION NO. 10-0398** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **IESI LA CORPORATION, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is Plaintiff Caldwell Parish Police Jury's ("Caldwell Parish")
Motion for Summary Judgment. [Doc. No. 12]. On December 10, 2010, Defendant IESI LA
Corporation ("IESI") filed an opposition. [Doc. No. 20]. On December 22, 2010, Caldwell Parish
filed a reply. [Doc. No. 21]. For the following reasons, Caldwell Parish's Motion for Summary
Judgment is GRANTED IN PART and DENIED IN PART. The Court GRANTS the motion on the
issue of liability, but DENIES the motion on the issue of damages.

## I.    BACKGROUND

On January 31, 2004, Caldwell Parish and IESI entered into a contract providing that IESI
would collect and dispose of solid waste from "residential service units" in Caldwell Parish for a
term of five years. IESI earned the contract by submitting a lower bid than other contractors.
Caldwell Parish later gave IESI a one-year extension to run from January 31, 2009, to January 31,
2010.

The contract used a formula to determine the amount of compensation that Caldwell Parish
paid IESI. Under the formula, the monthly unit rate was multiplied by the number of estimated
residential service units and months per year to arrive at the yearly compensation total under the

contract (monthly rate per unit * estimated units * months per year). [Doc. No. 16-1, p. 24]. The contract allowed IESI to petition Caldwell Parish at any time for rate adjustments due to an increase in the number of "Residential Units"[1] in Caldwell Parish. [Doc. No. 16-1, p. 21].

Caldwell Parish provided an initial residential service unit estimate of 4,321, which was the figure used to determine IESI's initial compensation under the contract formula. In July, 2006, IESI petitioned Caldwell Parish for a rate adjustment based on its belief that the number of residential units in Caldwell Parish was greater than 4,321. IESI suggested that Caldwell Parish use its 911 records to determine the number of residential units in the parish. After consulting the 911 record addresses, Caldwell Parish adjusted the residential unit figure from 4,321 to 6,650.[2] Beginning in July, 2006, Caldwell Parish increased the compensation it paid IESI based on the adjusted residential unit figure. In February, 2009, Caldwell Parish adjusted the residential unit figure from 6,650 to 6,840, again using 911 record addresses, which resulted in another compensation increase under the contract.

After the latest adjustment, Caldwell Parish requested that IESI perform an actual home count instead of using 911 record addresses. IESI completed this count in September, 2009, and determined a residential unit figure of 4,560. IESI gave a credit of $25,216.80 to Caldwell Parish for the month of August, 2009, and agreed to bill for 4,560 residential units, effective September 1,

---

[1] The term "residential service unit" was used to describe the estimated number of units in the bid sheet submitted by IESI, which was incorporated into its contract with Caldwell Parish. [Doc. No. 16-1, p. 24]. At other times, the contract uses "residential unit" to refer to the units serviced by IESI. [Doc. No. 16-1, p. 21]. The affidavits submitted to support Caldwell Parish's Motion for Summary Judgment use "residential unit."

[2] The Court notes that the evidence provided by Caldwell Parish conflicts on the exact adjusted figure. The adjusted figure is given as both 6,650 and 6,670.

2

2009. Caldwell Parish requested a credit for the amount it allegedly overpaid in previous years under the contract, but IESI refused.

Caldwell Parish asserts that the 911 record addresses provided an inaccurate estimate of residential units because the 911 records included vacant lots and properties, vacant camper hook-ups, camper hook-ups, abandoned homes, abandoned mobile home lots and mobile homes, irrigation water wells, gas wells, cell towers, firehouses, churches, recreational facilities, cemeteries, "barns and green houses if electricity is present, and any other location in which electricity is used or in which 911 addresses are required to connect electric power." [Doc. No. 13-5, p. 2]. Caldwell Parish asserts that these types of property did not "require garbage pickup under the contract as the contract only allow[ed] residential pickup of solid waste." *Id.* Caldwell Parish seeks repayment of $696,560.33 from IESI, the total amount of alleged overcharges.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party

to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## III.  ANALYSIS

Caldwell Parish requests relief pursuant to Louisiana Civil Code Article 2299 ("Article 2299"). That article provides, "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." LA. CIV. CODE art. 2299. Caldwell Parish argues that there are no genuine issues of material fact as to whether IESI received payments from Caldwell Parish that were not owed to IESI and that IESI must, therefore, return the payments to Caldwell Parish. Caldwell Parish asserts that, because the parties erroneously relied on the 911 record addresses to determine the number of residential units, it overpaid IESI $696,560.33 from July, 2006, through August, 2009.

In opposition, IESI contends that Caldwell Parish and IESI agreed to adjust the residential unit figure and increase payments "as anticipated and authorized by the Contract." [Doc. No. 20, p. 9]. Thus, IESI argues that Caldwell Parish did in fact owe the increased compensation to IESI and cannot recover under Article 2299.

IESI asserts that Caldwell Parish's true claim is not that it made payments to IESI that it did not owe, but that the agreement to increase payments should be rescinded due to error. IESI points out that a "valid obligation requires . . . consent," which "may be vitiated by error" under Louisiana

4

Civil Code Article 1949 ("Article 1949").  *Id.* at 19 (citing LA. CIV. CODE arts. 1927 & 1949).

However, IESI notes that, under Article 1949, error only vitiates consent if it "concerns a cause

without which the obligation would not have been incurred and that cause was known or should have

been known to the other party."  *Id.* (quoting LA. CIV. CODE art. 1949).  IESI argues that "[t]he

number of houses or Residential Units was not the principal cause of either the underlying Contract,

or of the price amendment."  *Id.* at 20 (emphasis removed).

IESI further argues that, even if the number of residential units was the principle cause of the

contract or price amendment, if the error was unilateral, then it "does not vitiate consent if the reason

for the error was the complaining party's inexcusable neglect in discovery of the error."  *Id.* at 20.

IESI contends that, if there was an error, it was a unilateral error made by Caldwell Parish and caused

by its negligence.  IESI concludes that Caldwell Parish is barred from vitiating the contract and, thus,

is precluded from recovering under Article 2299 because it validly owed the increased payments to

IESI.

However, Article 1949 only applies to the *formation* of the contract.  *See Gee v. AAA Life

Ins. Co.*, No. 37,201, p. 6 (La. App. 2 Cir. 5/14/03); 847 So.2d 103, 106; *Payne v. John Decker

Lincoln Mercury, Inc.*, No. 01-1469, p. 3 (La. App. 3 Cir. 3/27/02); 812 So.2d 888, 889-90.

Therefore, whether the contract can be vitiated due to error under Article 1949 is only a relevant

inquiry if the error relates to the formation of the contract.

In the present case, the alleged error in determining the number of residential units occurred

in the execution of the contract, not in the formation.  IESI does not argue that there was an error in

the contract formula or that the residential service unit estimate provided by Caldwell Parish in the

contract was erroneous.  Rather, the alleged error occurred when, pursuant to the contract, IESI

petitioned Caldwell Parish for an increase in compensation due to an alleged increase in residential units.  Caldwell Parish contends that, in recalculating the number of residential units, it erroneously used 911 record data, which did not provide an accurate estimate.  Thus, the Court finds that the error alleged by Caldwell Parish was in executing the contractual provision allowing IESI to petition Caldwell Parish for increased payments.  [*See* Doc. No. 16-1, p. 21].

If there was an error in the execution of the contract, then Caldwell Parish is entitled to relief under Article 2299.  *See Dynamic Exploration, Inc. v. Sugar Bowl Gas Corp.*, 367 So.2d 18, 22 (La. Ct. App. 1979) (citing Article 2302 of the Louisiana Civil Code of 1870, which has been incorporated into current Article 2299, *see* LA. CIV. CODE ART. 2299, revision comment (d)) (allowing recovery where a party overpaid because it erroneously executed the contractual provision for calculating the quantity of gas).

However, IESI argues that there may not have been an error because the contract, and particularly its definition of residential unit, is "confusing, filled with ambiguities, and lacking in clarity."  [Doc. No. 20, p. 12].  Whether a contract is ambiguous is a question of law.  *Sanders v. Ashland Oil, Inc.*, No. 96-1751, p. 9 (La. App. 1 Cir. 6/20/97); 696 So.2d 1031, 1037.  Under Louisiana law, if a contract is ambiguous, then parol evidence may be used to determine the parties' intent, and the parties' intent becomes a question of fact.  *See CF Indus., Inc. v. Turner Indus. Servs., Inc.*, No. 06-0856 (La. App. 1 Cir. 2/9/07), 2007 WL 438787, at *1; *Eiche v. East Baton Rouge Parish Sch. Bd.*, No. 92-1134 (La. App. 1 Cir. 7/2/93); 623 So.2d 167, 170.

The contract defines residential unit as follows:

A dwelling within the boundary limits of the <u>Parish</u> occupied by a person or persons comprising not more than one (1) family.  A Residential unit shall be deemed occupied when either water or domestic light and power services are being supplied

thereto.  Even so a residence without these services may also be served.

A condominium dwelling, whether of single or multi-level construction, consisting of four or less contiguous or separate single-family dwelling units, shall be billed separately as Residential Units.

[Doc. No. 16-1, p. 13].

IESI argues that what constitutes a "residential unit" under the contract is ambiguous and presents a genuine issue of material fact as to the parties' intent.  For example, IESI notes that, under its reading of the contract, a residential unit could encompass any dwelling with electric service. Further, IESI points out that the contract formula uses the term "residential service unit," which is not defined in the contract, unlike other terms such as "residential unit" and "service unit."  IESI implies that this use of inconsistent, overlapping terminology makes it harder to determine the proper number of units to be used in the contract formula.

IESI also argues that the contract did not contemplate using actual house count numbers in the compensation formula; rather, it provided for an estimated quantity.  IESI asserts that this further muddies the waters as to how residential units and compensation were to be determined.  IESI additionally notes that the contract does not clarify the confusing definition of residential unit by providing a method for determining the estimated number of residential units.  Given this uncertainty, IESI argues that using 911 record addresses (with business addresses subtracted) "appears to be a very reasonable estimate of Residential Units, if not a correct and up to date compilation."  [Doc. No. 20, p. 16].

In relying on an actual house count to determine the number of residential units, Caldwell Parish appears to interpret residential unit as meaning a home serviced by IESI under the contract. The Court finds that Caldwell Parish advances the only reasonable interpretation of the contract and

7

that the contract is not ambiguous.

Under Louisiana law, "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050. Although IESI challenges the sufficiency of the contract's definition of residential unit, its proposed interpretations would lead to absurd results that ignore the nature of the contract as a whole.[3]

Under the contract, IESI agreed to collect and dispose of solid waste from residential units, and Caldwell Parish agreed to compensate IESI for these services. If, as IESI argues, residential units could encompass any structure with electricity—whether or not IESI collected and disposed of waste from those units—then IESI would be entitled to compensation for servicing properties that did not produce waste, an absurd result at odds with the rest of the contract. Although the contract contemplated that an estimated number would be used in the compensation formula, the only reasonable interpretation is that it called for an estimated number of units that were actually serviced by IESI. The estimated number would clearly not include gas wells, cell towers, vacant lots, or other properties with 911 addresses that IESI did not service.

In light of the foregoing, the Court finds that Caldwell Parish is entitled to recover under Article 2299 for the amount that it overpaid under the contract due to its error in using 911 record addresses. Therefore, the Court GRANTS Caldwell Parish's Motion for Summary Judgment on the issue of liability.

------

[3] As to IESI's contention that the contract is ambiguous because "residential service unit" is undefined, the Court notes that undefined terms are accorded their ordinary meaning. *See Sher v. Lafayette Ins. Co.*, Nos. 07-2441, 07-2443, p. 6 (La. 4/8/08); 988 So.2d 186, 193; LA. CIV. CODE art. 2047. An ordinary meaning of residential service unit would not include all of the types of property assigned 911 addresses, such as gas wells, cell towers, and vacant lots.

However, the Court finds that there are genuine issues of material fact that preclude summary judgment on the amount of damages. In its attempt to recoup alleged overpayments from July, 2006, through September, 2009, Caldwell Parish provides numbers from the house count performed in September, 2009, and bases its damages from all years in question on the 2009 house count. The Court finds that it would be improper to compute damages from 2006, 2007, and 2008 based on data from 2009.[4] Moreover, Caldwell Parish produces conflicting evidence regarding the adjustment it made from July, 2006, to January, 2009. The evidence shows that the estimated residential unit figure was increased to both 6,650 and 6,670 during this period. [See Doc. Nos. 13-1, 13-2, 13-3, & 13-4]. Thus, there are genuine issues of material fact regarding the amount of overpayments made during the disputed contract periods.

## III.     CONCLUSION

For the foregoing reasons, Caldwell Parish's Motion for Summary Judgment [Doc. No. 12] is GRANTED IN PART and DENIED IN PART. The Court GRANTS the motion on the issue of liability, but DENIES the motion on the issue of damages. The Court finds that Caldwell Parish is entitled to recover under Article 2299 for the amount that it overpaid under the contract, but that there are genuine issues of material fact as to how much it overpaid.

---

[4] Although Caldwell Parish provides evidence from Scott Meredith, the tax assessor for Caldwell Parish, showing that in 2006, there were 4,473 total residences, it provides no data for years 2007 and 2008. Moreover, in computing its request for damages in 2006, Caldwell Parish relies on data from 2009.

MONROE, LOUISIANA, this 31st day of January, 2011.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE